FILED
2020 Sep-09  PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JIMMY LEE THOMPKINS, JR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:19-cv-01206-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Jimmy Lee Thompkins, Jr., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Thompkins timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Thompkins was 41 years old on December 31, 2017, the date last insured. (Tr. at 161, 177, 180-81.) He has a high school education and completed two years of college. (Tr. at 18, 273.) His past work experiences include employment as an

armored car driver, a general manager of a casino, a psychiatric aide, and a store laborer. (Tr. at 18, 64, 186, 216-24, 273.) Thompkins claims that he became disabled on May 27, 2016, due to heart problems, back problems, shortness of breath, major headaches, blurry vision, high blood pressure, feet tenderness, a broken ankle, forgetfulness, and dizziness. (Tr. at 185, 202, 214-15, 227, 249.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's physical and mental medically determinable impairments ("MDI"). *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will

result in a finding of not disabled.   *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination

3

of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Thompkins last met the insured status requirements of the Social Security Act on December 31, 2017. (Tr. at 17.) The ALJ further determined that Thompkins did not engage in SGA from May 27, 2016, the alleged onset date of his disability, through December 31, 2017, the date he was last insured. (*Id.*) According to the ALJ, Plaintiff's impairments of "heart, back, breathing, headaches, vision, hypertension, tender feet, and broken ankle, forgetful and obesity" are considered "severe" based on the requirements set forth in the regulations. (Tr. at 18.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in

4

20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19.) Subsequently, based on the evidence of record, the ALJ determined that Plaintiff has the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except he can push and pull occasionally, bilaterally. He can sit/stand every thirty minutes, as needed, in a normal eight-hour workday. He can occasionally stoop, balance, kneel, crouch and crawl but never climb ladders, ropes or scaffolds. He can frequently reach, including overhead with left extremity. [He] should avoid all concentrated exposure to pulmonary irritants, such as, fumes, odors, dust and gas. [He] should avoid all exposure to hazardous conditions, such as, unprotected heights, dangerous machinery, and uneven surfaces. [He] will have no more than one to two unplanned absence from work per month. [He] is limited to performing no more than simple, short instructions and simple work related decisions with few work places changes (unskilled work). [He] is limited to performing only simple, work-related decisions with few work place changes (low stress).

(Tr. at 19-20.)

Next, the ALJ determined that Thompkins "is unable to perform any past relevant work." (Tr. at 23.) The ALJ also determined that Thompkins is a "younger individual age 18-44," at 40 years old. (Tr. at 24.) Then, the ALJ found that the "[t]ransferability of job skills is not material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline. (Tr. at 24-25.) The VE found that there are a significant number of jobs in the national economy that Thompkins can perform, such as spotter, nut sorter, and dowel inspector. (Tr. at 24-

25.) The ALJ concluded his findings by stating that Thompkins "was not under disability, as defined in the Social Security Act, at any time from May 27, 2016, the alleged onset date, through December 31, 2017, the date last insured." (Tr. at 25.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Thompkins argues that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ erred in identifying "vague and undiagnosed impairments such as 'heart, back, breathing' instead of medically determinable impairments;" (B) the ALJ "fail[ed] to link the identified severe impairments to the [RFC] assessment;" (C) the ALJ failed to explain the reasoning behind the weight

assigned to the medical opinions; and (D) the ALJ failed to apply Social Security Ruling ("SSR") 02-1p in evaluating Plaintiff's obesity.

### A.    Use of common names for impairments at step two

At step two of the sequential evaluation process, the ALJ found that, through Plaintiff's date last insured, Thompkins had severe impairments of "heart, back, breathing, headaches, vision, hypertension, tender feet, and broken ankle." (Tr. at 18.) Plaintiff argues that the ALJ erred in using common names for the identified impairments instead of medical terms, demonstrating that he did not properly consider each impairment. However, the plaintiff has not shown any legal error from the ALJ's use of these terms, and the ALJ used the same terms that Plaintiff himself used in his disability report. (Tr. at 185, 202-04, 214-15, 227, 249.) While the impairments may be listed by common names, Plaintiff does not cite to any authority stating that the ALJ must use medical terms instead of common names. Additionally, for the reasons discussed in the following section, the ALJ appropriately considered all of Plaintiff's severe impairments in combination in evaluating his RFC, so Plaintiff cannot show any error that violated his substantial rights.

### B.    RFC assessment

Plaintiff's RFC is an administrative finding as to the most the plaintiff can do despite the limitations from his impairments. *See* 20 C.F.R. §§ 404.1527(d),

404.1545(a), 416.927(d), 416.945(a). A plaintiff's RFC is reserved for the ALJ and is concluded based on the relevant medical evidence and other evidence included in the case record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a plaintiff's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c). A plaintiff's statements about the frequency, intensity, and duration of her symptoms will only impact her RFC to the extent they are consistent with other evidence of record. *See* 20 C.F.R. §§ 404.1529, 416.929 (describing the Commissioner's process for evaluating subjective complaints).

In assessing Plaintiff's RFC, the ALJ examined diagnostic test results and clinical findings, opinion evidence, and the plaintiff's course of treatment when considering the effect of Plaintiff's impairments on his ability to work. (Tr. at 22-23.) The record demonstrates that the ALJ properly considered the objective evidence regarding Plaintiff's identified severe impairments in making the RFC assessment.

The ALJ noted that Thompkins reported limitations in his ability to work due to heart problems, back pain, shortness of breath, major headaches, blurry vision, high blood pressure, feet tenderness, a broken ankle, and forgetfulness. (Tr. at 20, 185.) When evaluating Plaintiff's symptoms, the ALJ first considered the plaintiff's Function Report, completed on July 19, 2016. (Tr. at 20, 212.) In Thompkins's

Function Report, he reported that since the onset of his conditions, he cannot stand for very long or walk far distances and experiences numbness in his legs when he sits. (Tr. at 206.) He indicated that his conditions affect his sleeping ability because he experiences an intensity in pain and an inability to breathe. (*Id.*) Thompkins alleged that he can maintain his personal care with assistance but cannot do house or yard work and does not drive because he experiences dizziness and cannot see well. (Tr. at 206, 208.) He reported that his conditions affect his ability to get along with family and friends. (Tr. at 210.) Thompkins also stated that his conditions affect his ability to lift, squat, bend, stand, walk, sit, and climb stairs, as well as his ability to concentrate, complete tasks, and follow instructions. (*Id.*) He further provided that he uses a cane, but the cane was not prescribed by a doctor. (Tr. at 211.)

The ALJ also examined the plaintiff's headache questionnaire from July 6, 2016, in which Plaintiff alleged that he has headaches daily, and that "[his] head hurts so bad that his eyes burn." (Tr. at 201-02.) Furthermore, Thompkins stated that the headaches cause him to become dizzy, requiring him to sit. He noted that his headaches were caused by light, loud sound, and heat, and he relieves the pain with over-the-counter medicine and sleep. (Tr. at 213.)

In his cardiovascular questionnaire considered by the ALJ, Thompkins stated that his daily exercise habits had become altered due to increased shortness of breath

as well as chest pain that occurs while exercising and sitting. (Tr. at 21, 214.) Plaintiff reported that he experiences shortness of breath "mostly every night," but he has not been treated by a doctor for shortness of breath or for the discomfort. (Tr. at 215.)

According to the Third-Party Function Report considered by the ALJ, LaKrissa Winston, a friend of the plaintiff, reported knowing Thompkins for five years and spending seven to ten hours a day with him. (Tr. at 21, 191.) In her testimony, Winston noted that she assists Thompkins in bathing, cooking, walking, driving, cleaning, and playing with children due to swelling in Plaintiff's legs and his shortness of breath, blurry vision, and headaches. (Tr. at 21, 191-95.) Lastly, she noted that Thompkins did not have insurance and described him as being depressed because of his inability to perform daily tasks and talking about "giving up and killing himself." (Tr. at 21, 197-98.)

The ALJ then examined medical evidence from various physicians concerning impairments of Plaintiff's musculoskeletal, respiratory, and cardiovascular systems. Within the medical evidence in the record, no physician listed Plaintiff's impairments as severe or as fully restricting him to perform any specific type of work.

First, the ALJ considered an examination conducted at the University of Alabama at Birmingham ("UAB") School of Medicine from August 17, 2016. (Tr.

at 21-22, 268). Thompkins, who was referred by the Social Security Administration, presented to UAB for a mental evaluation. (Tr. at 268.) In that mental evaluation, the examining psychologist, Dr. Donald Blanton, stated that Thompkins reported poor balance and weakness in grip strength within both hands. (*Id.*) Thompkins described his emotional problems by stating that "it feels like everything is closing in" and that he often feels like "giving up." (Tr. at 21-22, 268-69.) However, Dr. Blanton reported that Thompkins has never received any form of mental health treatment and has no history of taking any psychiatric medication. (Tr. at 268.) Dr. Blanton also noted that Thompkins's memory was "consistent" with his intellect, and that his "judgement was adequate for work and financial type decisions." (Tr. at 268-69.) Dr. Blanton diagnosed Thompkins with recurrent major depression. (*Id.*) Ultimately, Dr. Blanton's report made no mention of Thompkins's inability to perform any form of work. (*Id.*) Therefore, because the plaintiff's medically determinable mental impairment caused no more than "mild" limitation in any functional areas, this impairment was deemed "non-severe." (Tr. at 19.) The ALJ properly evaluated the opinion of Dr. Blanton in making his RFC determination.

Second, the ALJ considered an examination from August 23, 2016, performed by Dr. Stephen Robidoux. (Tr. at 22, 272.) During this examination, Dr. Robidoux found Thompkins to be severely obese but noted that he was in no acute distress and

had a normal unaided gait for his weight. (Tr. at 274.) Plaintiff was said to have normal grip, normal fine and gross manipulations, no atrophy, ataxia or spasticity and normal finger to nose. (Tr. at 275.) Dr. Robidoux's impression of Thompkins was that he had degenerative arthritis, as was shown by an x-ray. (Tr. at 276.) Dr. Robidoux stated that Plaintiff presented with many vague complaints, none of which required follow up care or further treatment. (*Id.*) After the examination, Dr. Robidoux concluded that there were no objective limitations for Thompkins's age or weight suggesting that he had limitations involving "sitting, standing, walking, lifting, carrying, kneeling, climbing stairs, handling objects, using hand and foot controls, talking, listening and travel." (*Id.*) Dr. Robidoux's opinion supports the ALJ's RFC assessment by failing to suggest that Plaintiff had further significant limitations than those already accounted for in the ALJ's determination. (Tr. at 19-23, 272-76.)

The ALJ also considered Plaintiff's medical records from Whatley Health Services. Thompkins presented to Whatley Health Services on October 19, 2016, with complaints of dizziness, chest pain, swelling, and insomnia. (Tr. at 22, 309-10). The examining physician, Dr. Gary Walton, found Thompkins to be positive for fatigue, increased fatigue, weight gain, awakening with shortness of breath, chest pain, irregular heartbeat, and struggles in initiating and maintaining sleep. (Tr. at

309-12.)  He also found Thompkins to have headaches and lack of coordination. (Tr. at 311.) Following the visit in October 2016, Thompkins returned to Whatley Health Services on May 5, 2017, complaining of chest pain and vomiting. (Tr. at 316.) Through a physical examination, Dr. Walton subsequently found that Thompkins was morbidly obese with a Body Mass Index ("BMI") of 65.06. (Tr. at 318.) When assessing Thompkins, Dr. Walton also diagnosed him with Type 2 diabetes with hyperglycemia, without long-term use of insulin. (Tr. at 310, 314.) Aside from Plaintiff's diagnoses of obesity and diabetes, Dr. Walton reported that Thompkins's eyes, hearing, heart rate, rhythms and sounds, and memory were all normal in finding. (*Id.*) Dr. Walton also listed Thompkins's psychiatric state as holding "appropriate mood and affect." (Tr. at 22, 318.) The ALJ properly considered the medical evidence from Whatley Health Services by specifically discussing the evidence as part of his RFC assessment. (Tr. at 22.) At a follow-up appointment on May 22, 2017, Thompkins was said to be compliant with his diabetes medication and mentioned having a thirteen-pound weight loss after following Dr. Walton's prior recommendations. (Tr. at 326.)

The ALJ also noted that Thompkins presented to Greene County Health Physician Clinic ("GCHPC") in January and February of 2018. (Tr. at 337, 339.) He presented to the clinic on January 19, 2018, with complaints of general discomfort,

weight gain, chest pain, anxiety, and depression. (Tr. at 339.) A physical examination performed by Certified Registered Nurse Practitioner (CRNP) Cheryl Lynn Hill showed normal findings, but Hill did identify obesity, diabetes, and general discomfort. (Tr. at 340.) Her diagnostic plan included a chest x-ray, and she recommended that Plaintiff engage in dietary and activity modification. (*Id.*) The ALJ also noted that Thompkins had further diagnostic testing completed on the same day and cited x-rays of the lumbar spine and chest, conducted by radiologist, Dr. Roland Ng. (Tr. at 22, 343-44.) The lumbar spine x-ray showed minor scoliosis and five lumbar type vertebrae, with "moderate degenerative facet disease at the lowest two levels." (Tr. at 22, 344.) The findings also showed minor degenerative disc disease, as well as very minimal grade I anterolisthesis of L4 upon L5. (Tr. at 344.) Dr. Ng noted that the study was compromised by the plaintiff's obesity and found no acute fracture. (*Id.*) A lateral chest x-ray, also performed by Dr. Ng, revealed slight scoliosis but no pulmonary edema, pneumonia, or pleura effusion. (Tr. at 343.) Dr. Ng again noted that Plaintiff was obese but reported no fracture or enlarged heart. (*Id.*)

During a February 12, 2018 visit, CRNP Hill examined Thompkins for a follow up consultation. (Tr. at 337-38.) Thompkins was found to have lumbar osteoarthritis and degenerative disc disease. (Tr. at 22, 338.) However, Hill listed

Thompkins's status as "moderate" but not disabling. (Tr. at 338.) In order to reduce admitted pain levels, Hill only recommended that Thompkins modify some activities. (Tr. at 338.) The diagnostic results and medical findings from GCHPC support the determination of the ALJ by revealing no evidence of a disabling limitation that would prevent Thompkins from being able to perform the type of work provided for by the ALJ's RFC assessment.

Thompkins presented another time to the GCHPC with the complaint of a headache on February 22, 2018. (Tr. at 23, 357.) Thompkins denied chest pain, abdominal pain, back pain, anxiety, and depression. (Tr. at 357.) Dr. Salahuddin Farooqui, found Thompkins to be awake, alert, oriented to person, place, and time, to have no focal weakness, and to be maintaining proper ambulation without difficulty. (Tr. at 23, 358.) Dr. Farooqui also found the plaintiff to have unlabored respiration with no evidence of obstruction. (*Id.*) In the examination, Dr. Farooqui found that Thompkins could move his extremities without difficulty and found his motor functions to be intact and symmetrical bilaterally. (*Id.*) At discharge, the record stated Thompkins voiced no complaints and was in no acute distress. (Tr. at 23, 365.)

The ALJ also considered the plaintiff's course of treatment, in addition to the objective medical findings in the record. Thompkins showed some history of

depression, but as the ALJ explained, he had never been to a mental hospital, received mental health treatment, or taken any psychiatric medications. (Tr. at 22, 268-69.) It was noted that Plaintiff did not take any medication or seek treatment for his physical symptoms, although Plaintiff did state that he occasionally takes Aspirin to relieve pain. (Tr. at 22, 278, 309, 316, 326.) He also admitted to having no additional treatment for his heart pain or for his headache complaints. (Tr. at 272.) The ALJ further noted that Thompkins had presented to Dr. Robidoux for a number of "vague complaints," with none requiring follow up care or continuous treatment. (Tr. at 22, 276.) Both CRNP Hill and Dr. Robidoux suggested Thompkins implement a more structured diet and exercise program, but this minimal course of treatment does not demonstrate that Thompkins is limited to a greater extent than provided for by the ALJ's RFC determination. (Tr. at 19-23, 276, 340.)

In sum, the clinical findings presented in the opinion evidence, the medical evidence, and in Plaintiff's treatment history specifically support the ALJ's RFC assessment.

### C.   Weight to medical opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature

and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-

treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Thompkins argues that the ALJ erred in failing to explain the weight he assigned to the medical opinions of Dr. Williams and Dr. Robidoux. However, the ALJ specifically considered the opinions of both physicians.

Dr. Williams issued a report on Plaintiff's mental health on September 1, 2016. (Tr. at 23, 89-90.) Dr. Williams stated that Thompkins was not "significantly limited" in his ability to remember locations, work-like procedures, and short instructions. (Tr. at 23, 89.) He also stated that Thompkins was only "moderately limited" in understanding and remembering detailed instructions, but he never

stated that his moderate limitation restricted all forms of potential work. (Tr. at 23, 89.) Dr. Williams noted that Thompkins was mild to moderately limited in his ability to sustain a routine and complete a normal workday, and he stated that Thompkins held no limitation in his social interactions. (Tr. at 90.) Dr. Williams further opined that Thompkins could perform simple tasks. (Tr. at 23, 84.) While Thompkins argues that the ALJ failed to explain his reasoning behind the weight he assigned to the medical opinion of Dr. Williams, the ALJ clearly articulated that he gave the opinion of Dr. Williams "some" weight because it was generally consistent with the objective medical evidence of the record. (*Id.*) Additionally, Dr. Williams was not a treating physician, so his opinion was not entitled to any special deference or consideration. *See Crawford*, 363 F.3d at 1160.

Dr. Robidoux is a consultative examiner who saw Plaintiff on August 23, 2016. (Tr. at 276.) Dr. Robidoux noted that he found no objective limitations for Plaintiff's age and weight, suggesting he had limitations involving sitting, standing, walking, lifting, carrying, kneeling, climbing stairs, handling objects, using hand and foot controls, talking, listening and travel. (Tr. 22, 276). The ALJ gave the opinion "partial" weight. (Tr. at 19-20.)

Thompkins argues that the ALJ failed to provide an appropriate explanation as to which part of the opinion he accepted and which he rejected. However, the ALJ

did do this. (Tr. at 23.) Dr. Robidoux noted Thompkins's obesity and degenerative arthritis, yet Dr. Robidoux never explained whether these impairments would affect the plaintiff's ability to work. (Tr. at 276.) He further stated that while Plaintiff had several complaints, they were mostly vague in nature and did not require follow up care or additional treatment. (*Id.*) Instead, he stated that a structured diet and exercise program would be the most beneficial course of action for Thompkins. (Tr. at 275.) The opinion of Dr. Robidoux provided no evidence of any objective limitations for Thompkins other than those provided for in the RFC assessment. (Tr. at 23.) Additionally, Dr. Robidoux was a one-time examiner, and therefore, his opinion was not entitled to any special deference or consideration. *See Crawford*, 363 F.3d at 1160. The ALJ's RFC determination was consistent with his opinion. (Tr. at 23, 276.)

### D.   SSR 02-1p

Plaintiff argues that the ALJ failed to apply SSR 02–1p when evaluating the limitations caused by his obesity. SSR 02–1p provides that obesity shall be considered when "determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment prevents a claimant 'from doing past relevant work and other work that exists in significant numbers in

the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (quoting SSR 02–1p).

The ALJ found that the plaintiff's obesity was a severe impairment. (Tr. at 18.) However, it was not severe enough to meet or medically equal the severity of a listed impairment. (Tr. at 19.) The ALJ specifically discussed the plaintiff's obesity and stated that it was a contributing factor in limiting the plaintiff to sedentary work. (*Id.*) The ALJ also specifically mentioned SSR 02-1p and considered the effects of Thompkins's obesity on his musculoskeletal, respiratory, and cardiovascular systems. (*Id.*) In determining the plaintiff's RFC, the ALJ explicitly discussed the medical opinion of Dr. Robidoux, who determined that Thompkins was "very obese," as well as the findings from an examination conducted at Whatley Health Services, which described Thompkins as "morbidly obese." (Tr. at 22, 274, 312.) The ALJ also noted that Thompkins had a BMI ranging from 60.0 to 69.9, as determined by Dr. Walton. (Tr. at 22, 309, 333.) The ALJ acknowledged Plaintiff's subjective complaints of a limited ability to "lift, squat, kneel, climb stairs, follow instructions, [and] concentrate," but also noted that Dr. Robidoux, when considering Plaintiff's weight, found no objective limitations to any activities, such as "sitting, standing, walking, lifting, carrying, kneeling, climbing stairs, handling objects, using hand and foot controls, talking, listening and travel." (Tr. at 20-21, 22,

210, 276.) Ultimately, the ALJ found that Plaintiff's obesity limited him to sedentary work with certain restrictions but did not preclude him from all SGA. (Tr. at 19-20.) In the RFC determination, the ALJ accounted for any effects caused by Plaintiff's obesity by specifically noting that Thompkins should never climb ladders, ropes, or scaffolds and should avoid all exposure to hazardous conditions, such as, unprotected heights, dangerous machinery, and uneven surfaces. (Tr. at 20.) The ALJ sufficiently considered the plaintiff's obesity in accordance with SSR 02-1p.

## IV.    Conclusion

Upon review of the administrative record, and considering Thompkins's arguments, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 9, 2020.

_____
L. Scott Coogler
United States District Judge

160704